# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

WOORI AMERICAN BANK,

    Plaintiff,

v.

SAHARA WESTWOOD HOTEL, LLC, *et al.*,

    Defendants.

Case No. 2:10-CV-00358-KJD-PAL

**ORDER**

Presently before the Court is Plaintiff's Motion for Summary Judgment (#25). Though the time for doing so has passed, Defendants have failed to file any response to Plaintiff's motion.

**I. Findings of Fact**

    **A. Background**

This case arises from Sahara Westwood Hotel, LLC ("SWH" or "Borrower") defaulting on a loan and Pravin L. Patel ("Patel" or "Guarantor") defaulting on a guaranty of that loan. The property securing the loan has been foreclosed upon and sold at a trustee's sale. Plaintiff filed its Complaint (#1) on March 15, 2010 against Borrower and Guarantor (hereinafter, collectively referred to as "Defendants") seeking a deficiency judgment to which it is entitled from the Defendants.

Patel filed his Answer (#2) on May 3, 2010.  Sahara Westwood Hotel failed to file an answer or otherwise respond to the Complaint.  A Default was entered by the Court Clerk on February 3, 2011 (#28) in favor of Plaintiff Woori America Bank ("Plaintiff" or "WAB") and against Defendant Sahara Westwood Hotel, LLC for failure to plead or otherwise defend the claims brought against it.

This matter now comes before the Court on Plaintiff's Motion for Summary Judgment and Request for Valuation Hearing Pursuant to NRS 40.457 (the "Motion for Summary Judgment").  On January 31, 2011, Plaintiff filed its Motion for Summary Judgment against Defendants.  On January 31, 2011, the Court issued a Minute Order Regarding the Requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (the "Klingele/Rowland Notice") (#26).  Defendants failed to file a response to the Motion for Summary Judgment or otherwise respond the Klingle/Rowland Notice.

After reviewing the evidence presented and finding good cause, this Court finds in favor of Plaintiff and against Defendants on Plaintiff's Motion for Summary Judgment as follows:

**B.  Statement of Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) as the aggregate amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is diversity between Plaintiff and all Defendants in this action.  WAB is a bank chartered under the laws of the State of New York with its principal place of business in the State of New York. (Declaration of Bryan T. Kim in Support of Motion for Summary Judgment ("Decl. of B. Kim", ¶ 24); *See also* Secured Promissory Note attached to MSJ at Exhibit 2).  Therefore, Plaintiff is a citizen of the State of New York pursuant to 28 U.S.C. § 1348.  SWH was organized as a Nevada limited liability company, with its principal place of business in Nevada.  (Ans., ¶ 2).  Pravin is a citizen of the State of California and the sole manager and member of SWH (Ans., ¶ 5).  Pravin is also known as Pravin Patel, Pravinkumar L. Patel and Pravin Lallubhai Patel.  (Ans. ¶ 7).

////

////

### C. Undisputed Facts

#### 1. The Loan and Guaranty

On or about May 4, 2006, SWH executed a "Secured Promissory Note" (the "Note") in favor of WAB through which SWH promised to pay WAB the principal amount of $4,350,000.00 with interest thereon at the rate of 8.25% per annum (the "Loan"). (Ans., ¶ 11; Decl. of B. Kim, ¶ 3). At the same time, SWH and WAB also entered into a "Loan Agreement" governing the Loan (the "Loan Agreement"). (Ans. 12, ¶ 11; Decl. of B. Kim, ¶ 4).

In connection with the Loan, SWH, as trustor, executed a "Deed of Trust, Assignment Rents, Security Agreement and Fixture Filing" in favor of WAB, as beneficiary, to secure the Note (the "Deed of Trust"). (Ans. 12; Decl. of B. Kim, ¶ 5). The Deed of Trust was recorded in the Official Records of Clark County, Nevada ("Official Records") on May 17, 2006, as Book No. 20060517, Instrument No. 0003216. The Deed of Trust encumbered, among other things, real property located in Clark County, Nevada as further described in Exhibit A of the Deed of Trust, and commonly known as the "Vagabond Inn Las Vegas" (the "Vagabond Inn"). (Ans. ¶ 14).

On or about May 4, 2006, SWH executed an "Assignment of Rents and Leases and Agreements Affecting Real Estate" in favor of WAB (the "Assignment of Rents"). (Ans. ¶ 15; Decl. of B. Kim, ¶ 6). The Assignment of Rents was duly recorded in the Official Records on May 17, 2006 as Book No. 20060517, Instrument No. 0003217.

On or about May 4, 2006, Guarantor executed an "Unconditional and Continuing Guaranty and Indemnity Agreement" in favor of WAB guaranteeing the payment to WAB of all amounts due and owing under the Loan Documents, as defined below, together with interest and any other sums payable under the Loan Documents (the "Guaranty"). (Decl. of B. Kim, ¶ 7). Pursuant to the terms of the Guaranty, Guarantor waived all rights and defenses that Guarantor may have because the Loan is secured by real property, including, pursuant to Section 2.5 of the Guaranty, the benefits of the one-action rule described in NRS 40.430. Borrower executed a Disbursement Authorization dated

1   May 12, 2006, which summarized the entire Loan disbursement of $4,350,000.00 (The
2   "Disbursement Authorization"). (Decl. of B. Kim, ¶ 8).
3      A UCC Financing Statement was duly recorded in the Official Records on May 17, 2006 as
4   Book No. 20060517, Instrument No. 0003218 covering the collateral described in Schedule "1"
5   attached thereto and by reference incorporated into the UCC Financing Statement (the "Financing
6   Statement"). (Ans. ¶ 17; Decl. of B. Kim, ¶ 9). The Note, Loan Agreement, Deed of Trust,
7   Assignment of Rents, Guaranty and Financing Statement are hereafter collectively referred to as the
8   "Loan Documents."
9      **2. The Borrower's Defaults under the Loan Documents**
10   SWH defaulted under the terms of the Loan by failing to make the monthly installment
11   payment which became due on November 5, 2008 and all subsequent installments, together with, but
12   not limited to, late charges, delinquent taxes, delinquent insurance premiums, impounds, attorneys'
13   fees, costs and advances. (Ans. ¶¶ 24 and 40; Decl. of B. Kim, ¶ 10). To date, all principal, interest,
14   and other sums due and owing to WAB under the Note remain unpaid. (Decl. of B. Kim, ¶ 11).
15   SWH's failure to timely pay all sums outstanding under the Note constituted an Event of Default
16   under the Loan Documents. (Note, p. 2; Loan Agreement, § 8.1; Deed of Trust, § 22(a) and Decl. of
17   B. Kim, ¶ 12).
18      On or about April 23, 2009, WAB substituted Integrated Lender Services ("Integrated") as
19   the trustee under the Deed of Trust pursuant to a "Substitution of Trustee" recorded in the Official
20   Records on May 8, 2009 as Book No. 20090508, Instrument No. 0004434 (the "Substitution of
21   Trustee"). (Decl. of B. Kim, ¶ 13).
22      On May 8, 2009, pursuant to the Deed of Trust, Integrated recorded a "Notice of Default and
23   Election to Sell under Deed of Trust" in the Official Records as Book No. 20090508, Instrument No.
24   0004435 (the "Default Notice"). On August 24, 2009, pursuant to the Deed of Trust, Integrated
25   recorded a "Notice of Trustee's Sale" in the Official Records as Instrument No. 200908240002910
26   (the "Notice of Sale"). The Vagabond Inn was sold at public auction on September 16, 2009 by

4

Integrated in exercise of Integrated's powers under the Deed of Trust.  On October 9, 2009, Integrated recorded a "Trustee's Deed upon Sale" in the Official Records as Instrument No. 200910090003193 (the "Trustee's Deed").  At the time of the Trustee's Sale, the unpaid balance due and owing from SWH to WAB under the Loan was $4,693,763.49 (Decl. of B. Kim, ¶ 14).

### 3. The Guarantor's Obligations

Pursuant to § 2.1 of the Guaranty, Guarantors "[a]bsolutely and unconditionally guarantee[]… (a) the full and prompt payment of the principal, interest, premiums, penalties and late charges, if any, and any other amounts required to be paid by Borrower . . . [under the Loan Documents] and (b) the full and prompt performance of all other obligations, if any, required to be performed by Borrower [under the Loan Documents]." Further, under § 2.6 of the Guaranty, Guarantor agreed to pay any and all costs and expenses (including, without limitation, attorneys' fees) incurred by Lender in enforcing or attempting to enforce any rights under the Guaranty.

### 4. Plaintiff's Performance under the Loan Documents

Neither Defendant denies that SWH borrowed $4,350,000.00 from WAB; that Patel executed a personal guarantee of SWH's payment and performance of all agreements for indebtedness of SWH to WAB; that the Loan was secured by the Deed of Trust, or that neither Defendant paid the monies due and owing under the Loan.  Neither Defendant contested any of the facts related to its breach of the agreement to repay the Loan.  Neither Defendant has introduced any evidence that Plaintiff has not fully performed its obligations under the Loan Documents. (*See also* Decl. of B. Kim, ¶ 13)

## III. Conclusions of Law

### A. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). After the moving party meets its burden, however, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. *Id.*

### B. Application For Deficiencies Under NRS 40

#### 1. Breach of Loan Documents

The Loan Documents are governed by Nevada law pursuant to their written terms. The Loan Documents constitute a valid and existing contract between Lender and Borrower. The elements for a cause of action for breach of contract are (1) a valid and existing contract; (2) performance by plaintiff; (3) defendant's failure to perform and (4) resulting damages. *Calloway v. City of Reno, 116 Nev. 250, 993 P.2d 1259 (2000)*. Construction of a contractual term is a question of law. *Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 486, 117 P.3d 219 (2005). When a contract is unambiguous, its plain meaning must control the court's analysis. *State v. Sutton*, 120 Nev. 972, 980, 103 P.3d 8 (2004).

Plaintiff has fully performed its obligations under the Loan Documents. (Decl. of B. Kim, ¶ 13). Borrower breached the terms of the Loan Documents by failing to make the monthly installment payment which became due on November 5, 2008 and all subsequent installments, together with, but not limited to, late charges, delinquent taxes, delinquent insurance premiums, impounds, attorneys' fees, costs and advances. (Decl. of B. Kim, ¶ 10). As a result of Borrower's breach of the terms of the Loan Documents, Lender has suffered damages in the amount set forth in Section III (C) below.

#### 2. Breach of Guaranty

Contracts of guarantee are subject to the statute of frauds. NRS 111.220(2). "To satisfy the statute of frauds, a contract must contain certain essential elements: "(A) note or memorandum 'must show on its face or by reference to other writings, first, the names of the parties…; second, the terms

and conditions of the contract; third, the interest or property affected; and fourth, the consideration to be paid therefor.'" *Pentax Corp. v. Boyd*, 111 Nev. 1296, 1299-1300, 904 P.2d 1024, 1026 (1995) (citations omitted). "Concerning guarantees, the name of the party whose debt is being guaranteed is the interest affected, and is, therefore, one of the essential terms." Id.

The Guaranty at issue in this matter satisfies all four of these elements. First, the Guaranty is in writing and signed by Guarantor. Second, the terms outlined in the Guaranty clearly provide that Guarantor "[a]bsolutely and unconditionally guarantee[]… (a) the full and prompt payment of the principal, interest, premiums, penalties and late charges, if any, and any other amounts required to be paid by Borrower . . . [under the Loan Documents] and (b) the full and prompt performance of all other obligations, if any, required to be performed by Borrower [under the Loan Documents]." (Guaranty, § 2.1). Third, the interest affected is defined as the Borrower. Fourth, the Guaranty notes that the Guaranty was given for value received, in consideration of, and in order to induce Plaintiff to make the loan, and words of this type are a sufficient expression of consideration. *White Sewing Mach. Co. v. Fowler*, 28 Nev. 94, 109, 78 P. 1034 (1904) (the words "for value received" are a sufficient expression of the consideration). Consideration can be fairly implied from the language of the instrument, and the extension of credit is sufficient consideration. *Id.* at 109-110, 78 P. at 1034; *Matusik v. Large*, 85 Nev. 202, 208, 452 P.2d 457, 460 (1969) ("'The assumption of a liability at the request of the promisor is a valuable consideration, as, for example, a guaranty of the promisor's debt'"). The Guaranty is a valid and existing contract between Lender and Guarantor.

Borrower breached the terms of the Loan Documents by failing to make the monthly installment payment which became due on November 5, 2008 and all subsequent installments, together with, but not limited to, late charges, delinquent taxes, delinquent insurance premiums, impounds, attorneys' fees, costs and advances. As a result, Guarantor is liable to Plaintiff for all amounts owed by Borrower to Plaintiff under the Loan Documents, including fees, costs, and interest. To date, Guarantor has not paid the amounts due and owing. (*See* Decl. of B. Kim ¶ 18). As

a result, Guarantor has breached the terms of the Guaranty thus damaging Plaintiff in the amount set forth in Section III (C) below.

### C. Deficiency Judgment Calculation Under NRS 40.459

NRS Chapter 40 governs deficiency judgments.  Under NRS 40.455, a judgment creditor may apply to the court for a deficiency judgment "within 6 months after the date of the foreclosure sale or the trustee's sale."  "The court shall award a deficiency judgment to the judgment creditor or the beneficiary of the Deed of Trust if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the Deed of Trust, respectively."  NRS 40.455(1).

The deficiency judgment for which the Defendants are liable, pursuant to NRS 40.459, the Deed of Trust, the Note, the Trustee's Deed and the Appraisal is calculated below.  Also detailed is all relevant and required information regarding the foreclosure of these properties and their fair market values.

In compliance with NRS 107.080(4), Integrated noticed the sale of the Property after the Default Notice was recorded and upon expiration of all statutorily prescribed periods under NRS 107.080.  On September 16, 2009, after complying with all relevant statutes and the Deed of Trust, the Trustee held the Trustee's Sale.  On April 29, 2010, the Trustee recorded the Trustee's Deed thereby conveying the Real Property to WAB.

At the time of the Trustee's Sale, the unpaid balance due on the Loan was $4,693,763.49.  (Decl. of B. Kim, ¶ 14).   At the Trustee's Sale, the Trustee sold the Property to WAB for the highest and best bid of for $4,000,000.00.  (Trustee's Deed).  The Real Property was appraised by Kimiyasu Murayoshi and Ho Joo Lee on September 28, 2010 (the "Property Appraisal").  Messrs. Murayoshi and Lee opined that the fair market value of the Property as of September 16, 2009 was $2,700,000.00.

////

////

1  NRS 40.459 limits the amount of a deficiency judgment to the lesser of:

2  • The amount by which the amount of the indebtedness which was secured exceeds the

3  fair market value of the property sold at the time of the sale, with interest from the

4  date of the sale; or

5  • The amount which is the difference between the amount for which the property was

6  actually sold and the amount of the indebtedness which was secured, with interest

7  from the date of sale.

8  In this case, the fair market value ($2,700,000.00) does not exceed the amount for which the
9  property was actually sold ($4,000,000.00) (the "Purchase Price"), so the applicable formula is the
10 difference between the purchase price and total indebtedness.

11 WAB's maximum recovery is the total amount of its indebtedness minus the total of the
12 Purchase Price. The total indebtedness at the time of the Trustee's Sale was $4,693,763.49, which
13 includes the unpaid principal balance and accrued interest through the Trustee's Sale and is exclusive
14 of Trustee Costs. Thus, the difference between the purchase price and the fair market value of the
15 property at the time of the sale is $693,763.49, plus reasonable attorneys' fees and costs.

16 /////
17 /////
18 /////
19 /////
20 /////
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////

9

The amount of the deficiency plus accrued interest, fees, and costs, is calculated as follows:

**Foreclosure:** Sale occurred September 16, 2009

| Principal Balance 9/16/09 | Interest due to 5/25/2011 |
|---|---|
| $4,693,763.49 | $213,679.15 |
| ($4,000,000.00)* | |
| $693,763.49 | $213,679.15 |

| | | |
|---|---|---|
| Principal balance (post-foreclosure) | $693,763.49 | |
| Interest** accrued to 5/25/11: | $213,679.15 | |
| Principal & Interest due 1/31/11 | | $907,442.64 |
| **Plus Costs and Fees:** | | |
| Delinquent Property Taxes | $182,380.82 | |
| Transfer Taxes | $20,400.00 | |
| Non-Judicial Foreclosure Costs | $30,664.72 | |
| Delinquent Sewer Fees | $17,844.92 | |
| Delinquent Room Tax | $192,919.95 | |
| Appraisal Reports | $25,500.00 | |
| Utilities and Maintenance | $70,932.71 | |
| Property Tax | $21,270.98 | |
| Sewer Tax | $471.00 | |
| Fire Alarm | $1,369.00 | |
| Total fees and non-litigation costs due to 5/25/11 | | $563,754.10 |
| **Total amount due to:** 5/25/2011 | | $1,471,196.74 |

\* Greater of FMV or Sale Price

\*\*Default Rate of Interest is 18% per annum calculated on a 360 year

### 1. Plaintiff is Entitled to Pre-and Post-Judgment Interest on the Deficiency

In a diversity action, federal courts apply state law in determining the rate of pre-judgment interest and federal law in determining post-judgment interest. *See Northrop Corp. v. Triad Int'l Marketing S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988). Pursuant to NRS 17.030(2) where a contract

10

provides an interest amount and method for calculation, that method controls.[1] The Loan Documents provide that interest was to accrue at the Default Rate of interest of 18.00% per annum calculated on a 360 day year. In Nevada, pre-judgment interest is calculated as simple interest. *Campbell v. Lake Terrace*, 111 Nev. 1329, 1334 (1995) (overruled on other grounds) ("unless an instrument specifically calls for compound interest, only simple interest will be allowed."). Therefore, pursuant to Nevada law, the rate of interest stated in the Loan Documents shall control, and interest shall bear from the date of default, until judgment, calculated as simple interest.

In this case, the total principal indebtedness without accrued interest at the time of the Trustee's sale was $4,693,763.49.[2] (Decl. of B. Kim, ¶ 15). The Real Property was sold for $4,000,000.00, and the fair market value of the property at the time of the Trustee's sale was $2,700,000.00. Because the sale price is higher, the deficiency amount is calculated by subtracting the sale price from the total amount owing, leaving a deficiency of $693,763.49 owed to WAB under the Loan. (*See* Ex. 13, Property Appraisal; Ex. 12, Trustee's Deed).

Since judgment has not been entered at this time, interest shall be calculated on the remaining balance of $693,763.49 from September 16, 2009 to the date in which Final Judgment is entered. Based on the foregoing, Plaintiff is entitled to pre-judgment interest of $213,679.15 through May 25, 2011 and continuing thereafter until entry of Final Judgment.

Plaintiff is also entitled to post-judgment interest from the date of judgment. Post-judgment interest in Federal diversity cases is governed by 28 U.S.C. § 1961. Under Federal law, post-judgment interest is calculated from the date the judgment is entered and is equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment. 28 U.S.C. § 1961(a).

---

[1] NRS 17.030(2) states in relevant part: "When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint until satisfied…"

[2] The rate used to calculate the accrued interest was the Default Rate, which equals 18% per annum calculated on a 360 day year pursuant to the Note. (Note, p.1)

11

Interest is calculated daily on all remaining amounts until the award is paid off.  28 U.S.C. § 1961(b). As a judgment has not been entered at this time, post-judgment interest should be awarded as provided by law until the balance of the award is satisfied.

    **2.  Plaintiff is Entitled to Other Costs and Fees Incurred to Obtain Deficiency Judgment.**

WAB incurred various other costs and fees as a result of Defendants default including:

| | | |
|---|---|---|
| a. | Delinquent Property Taxes: | $182,380.82 |
| b. | Transfer Tax: | $20,400.00 |
| c. | Non-Judicial Foreclosure Costs: | $30,644.72 |
| d. | Delinquent Sewer Fee: | $17,844.92 |
| e. | Delinquent Room Tax: | $192,919.95 |
| f. | Appraisal Reports: | $25,500.00 |
| g. | Utilities and Maintenance: | $70,932.71 |
| h. | Property Tax: | $21,270.98 |
| i. | Sewer Tax: | $471.00 |
| j. | Fire Alarm: | $1,369.00 |

These costs and fees total $563,754.10, bringing the balance due as of May 25, 2011 to $1,471,196.74. (Decl. of B. Kim, ¶ 17).  This balance is subject to pre-judgment interest which continues to accrue at the default rate of interest of 18% per annum, post-judgment interest and reasonable attorneys' fees and costs.

    **D.  Legal Fees and Costs**

Additionally, WAB has employed legal counsel to prosecute this action and, pursuant to the terms of the Loan Documents, WAB is further entitled to recover its costs, expenses, and reasonable attorneys' fees incurred after the Trustee's Sale and/or in prosecuting this action, including but not limited to post-judgment collections' fees and costs.

### IV.  Conclusion

Because there are no facts in dispute, summary judgment in favor of Plaintiff and against Defendants is warranted at this time on all claims for relief.  Plaintiff is entitled to a judgment for damages against Sahara Westwood Hotel, LLC, a Nevada limited liability company and Pravin L. Patel a/k/a Pravin Patel, Pravinkumar L. Patel and Pravin Lallubhai Patel, jointly and severally, in the amount of $1,471,196.74.  Plaintiff is also entitled to its reasonable attorneys' fees pursuant to the Loan Documents and shall prepare and submit to the court a motion for attorneys' fees under Fed. R. Civ. P. 54(d)(2).  Plaintiff is entitled to taxable costs under Fed. R. Civ. P. 54(d)(1) and shall prepare and submit to the court a memorandum of costs.  Plaintiff is entitled to an award of pre-judgment interest against Defendants accruing from September 16, 2009 through the date in which Final Judgment is entered pursuant to NRS § 17.030(2).  Plaintiff is entitled to post-judgment interest on the total amount of this judgment pursuant to 28 U.S.C. § 1961.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#25) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Plaintiff and against Defendants in the amount of $1,471,196.74.

DATED this 6TH day of June 2011.

_____
Kent J. Dawson
United States District Judge